# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID AYERS,** | : | Case No. 1:04CV0133 |
| Petitioner, | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| | : | |
| **MARGARET BRADSHAW, Warden** | : | <u>OPINION AND ORDER</u> |
| | : | |
| Respondent. | : | |

On January 27, 2004, Petitioner, David Ayers ("Ayers or Petitioner"), pursuant to 28 U.S.C. § 2254, filed a counseled petition for a writ of habeas corpus (Doc. 1). On February 3, 2004, the Court referred (Doc. 6) this matter to Magistrate Judge James S. Gallas for preparation of a Report and Recommendation ("R&R") upon completion of the briefing on Ayers' petition. On March 8, 2004, Respondent, Margaret Bradshaw ("Bradshaw or Respondent"), filed a Return of Writ ("Return or Answer") (Doc. 11). On March 14, 2007, Ayers filed a Traverse (Doc. 31).[1]

---

[1] The reason for the lengthy delay between the Return and the Traverse is that Ayers sought an extension of time (Doc. 24) and then a stay of the entire case (Docs. 27 and 28) pending his appeal to the Supreme Court of Ohio on a DNA issue that, if successful, may have mooted this case. As the docket reflects, that appeal was unsuccessful.

Of note, even though the motion for an extension of time until December 1, 2004 (to file the Traverse) was filed <u>after</u> the original Traverse deadline, the Court granted the requested extension. Similarly, even though the motion to stay was filed after the new December 1, 2004 deadline (it was filed on October 31, 2006), the Court granted the motion and stayed the case until February 12, 2007. In connection with the stay, Ayers also sought an extension until March 12, 2007 to file his Traverse, which the Court granted. While the Court acknowledges that March 12, 2007 was a Sunday, Ayers did not file his Traverse (Doc. 31) until Tuesday, March 14, 2007. Technically, therefore, <u>Ayers' Traverse was untimely</u>.

On June 22, 2007, Magistrate Judge Gallas issued an R&R (Doc. 32) recommending that this Court deny Ayers' petition. Having been granted an extension, Ayers filed objections to the R&R on July 26, 2007 (Doc. 34). For the reasons outlined herein the Court agrees with the R&R's conclusions, most of which Ayers has not challenged in his objections. The Court, therefore, need only address Ayers' objections. For the reasons outlined herein and in the R&R, which the Court **ADOPTS**, Ayers' petition is **DENIED** and this case is be **DISMISSED.**

I.     **BACKGROUND**

The R&R accurately sets forth this case's *undisputed* factual[2] and procedural background. In the interest of efficiency, therefore, the Court incorporates by reference the R&R's articulation of these items (which was lifted directly from the state appellate court's opinion) and does not restate them here. To the extent necessary, the Court will elaborate on factual and/or procedural issues worthy of additional consideration. In sum, this case arises from the conviction of Cuyahoga Metropolitan Housing Authority special officer, David Ayers, for aggravated murder, aggravated burglary and aggravated robbery. Ayers has exhausted his state court appeals and is now pursuing habeas relief from this Court.

Ayers has presented four grounds for habeas relief. For his <u>first ground</u>, he asserts that his right to due process, as addressed in *Brady v. Maryland*, 373 U.S. 83 (1963), was violated because the prosecutor withheld discovery material from the defense – including "exculpatory" evidence.

---

[2]     As did the magistrate judge, the Court relies on the facts as provided by the state courts. *Bell v. Bell*, 460 F.3d 739, 743 (6th Cir. 2006); *see also* 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Regardless, Ayers does not challenge the R&R's recitation of the facts.

The purportedly withheld information included: (1) the fact officers Michael Cipo and Denise Kovach would testify that Ayers made incriminating statements to them while he was being booked;[3] and (2) evidence relating to brothers Darren and Jarret Ward, who initially were suspects but had been ruled out as such by the police. In sum, there had been reports that the brothers (or at least one of them – Jarret Ward) had been breaking into residences at the apartment complex where the victim was murdered and that Darren Ward previously had been charged with a "sex-related" offense in which the victim was found in a similar condition as the victim in this case.

For his second ground, Ayers asserts prosecutorial misconduct. He claims that the prosecutor: (1) improperly failed to disclose that officers Cipo and Kovach would testify about incriminating statements Ayers made while being booked (*i.e.*, his first ground above); (2) impermissibly obtained a confession from Ayers by using a fellow inmate of Ayers as a "government agent" (*i.e.*, his third ground below); and (3) during closing argument, improperly commented on the testimony of a witness – namely, the prisoner-witness Ayers purports was a "government agent" – in an attempt to bolster that testimony's credibility.[4]

For his third ground, Ayers asserts that his Sixth Amendment right to counsel was violated because the prosecution called as a witness a fellow inmate of Ayers whom the police allegedly had "recruited" to obtain a confession from Ayers. Ayers argues that the inmate witness, Donald

---

[3]  Ayers acknowledges that he was aware of, and that the prosecutor had disclosed in discovery, testimony to be offered by a third officer to whom Ayers had also made the same – essentially identical – incriminating statement.

[4]  As noted, some of the arguments in support of the prosecutorial misconduct ground overlap with independently asserted grounds for relief – *e.g.*, the alleged *Brady* violation and the alleged misuse of the confession obtained through a fellow inmate's testimony. In this regard, the Court's (and the R&R's) analyses of the independent grounds for relief partially subsume the issues raised in the prosecutorial misconduct ground.

Hutchinson, was working at the direction of the police when he interacted with Ayers in jail, and ultimately "obtained" a confession by probing Ayers with questions about the underlying crime. In sum, Ayers argues that the inmate was a "government agent" such that Ayers was entitled to counsel during the interactions during which the confession was made.

For his fourth ground, Ayers simply asserts that the prosecution did not present sufficient evidence to support his conviction. Ayers, however, provides little to no argument in support of this ground. Indeed, argument in support of this ground is essentially non-existent. In his Traverse only, Ayers generically references the bases for his Criminal Rule 29 motions (made at trial) and summarily states, though without any explanation, that the prosecution failed to prove every element beyond a reasonable doubt.

## II. LAW AND STANDARD OF REVIEW

Because Ayers filed his habeas petition on January 27, 2004 (Doc. 1), the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act") governs this Court's review of that petition. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).[5] In pertinent part, the AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5] The AEDPA applies to petitions filed after the Act's April 26, 1996 effective date.

>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, various circuits accorded differing interpretations as to the appropriate standard to be applied.[6] In response to these nationwide variations, the Supreme Court directly addressed the AEDPA's statutory language and, as repeatedly acknowledged by the Sixth Circuit, announced that the statute "places a new <u>constraint</u> on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (*quoting Williams v. Taylor*, 529 U.S. 362, 412 (2000) (emphasis added).

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court clarified §2254(d)(1), stating that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion <u>opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts</u>. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but <u>unreasonably applies</u> that principle to the facts of the prisoner's case.

529 U.S. at 412-413 (emphasis added). The Court also provided guidance regarding the meaning of "unreasonable application." A state court's decision can engender an "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a

---

[6] *Compare Green v. French*, 143 F.3d 865 (4th Cir.1998), *and Nevers v. Killinger*, 169 F.3d 352, 358 (6th Cir. 1999), *with Long v. Humphrey*, 184 F.3d 758 (8th Cir.1999), *and Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999).

5

legal principle from Supreme Court precedent to a new context." *Id*. at 409. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. (Emphasis added). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

Additionally, in reviewing habeas petitions, federal courts are obliged to "accept a state court's interpretation of that state's statutes and rules of practice." *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). Similarly, they are not free to ignore the pronouncement of a state appellate court on matters of state law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000). The standard of review applied to the merits of a petition for a writ of habeas corpus, therefore, is a stringent one.

### III.   DISCUSSION

The 31-page R&R addresses in detail each of the grounds for relief asserted in Ayers' petition. Having reviewed all of the parties' submissions, as well as the record as a whole, the Court agrees with the R&R's conclusion that Ayers' petition should be denied, as well as its reasoning in support of that conclusion. Except with regard to Ayers' objections, which the Court is required to review *de novo*, the Court concludes that further analysis beyond that provided in the R&R is unnecessary. 28 U.S.C. § 636(b)(1); *see also Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986). Accordingly, the Court ADOPTS the R&R.

Most, if not all, of Ayers' objections are baseless and/or attempt to expand relatively insignificant issues, to the extent they even exist, into large-scale legal flaws warranting habeas

relief. While he claims that the R&R makes various "fundamental" errors, Ayers cites absolutely no legal authority in support of that view. In fact, except for several passing references to two statutes, Ayers does not substantively cite any legal authority in his objections.[7] For these reasons alone, Ayers' objections warrant little attention. Nevertheless, the Court reviews each in turn.

### A. Ground One (5th Amendment) – Alleged Violations of Brady v. Maryland, 373 U.S. 83 (1963).

Ayers alleges various discovery violations by the prosecution in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he claims that the prosecution improperly failed to inform him *sufficiently* in advance of trial: (1) that officers Cipo and Kovach would testify that Ayers made an incriminating statement to them; and (2) of the identity of (and details relating to) "other suspects" the police had "ruled out" before Ayers was prosecuted. The suspects at issue are brothers, Darren and Jarret Ward.[8] In sum, Darren Ward had a prior conviction for a sex-related offense, and Jarret Ward (possibly with Darren Ward as well) allegedly had broken into several apartments in the apartment complex where the murder occurred.[9] Because Ayers' objections relate

---

[7] Ayers generically cites 28 U.S.C. 2254(d)(1) and R.C. 2903.01(A).

[8] On its face, Ayers' *Brady* ground alleges broad discovery violations by the prosecution. Based on arguments presented in Ayers' Traverse, however, the R&R concludes that Ayers' *Brady* claim is limited to two pieces of evidence: (1) Cipo and Kovach's testimony of Ayers' incriminating statement to them (revealed on the day of trial); and (2) the existence of the Ward brothers as initial suspects. Ayers does not object to this focused characterization of his *Brady* claim.

[9] As outlined in the state appellate court's opinion and the parties' papers, the details of the Ward brothers evidence are debatable in light of the evidence presented at trial. For example, the apartment complex manager testified that there had been no complaints of break-ins by the Wards since she was hired in April of 1999 (the murder occurred in December of 1999). She testified only that she heard of "reported" break-ins that had occurred prior to her hire. In light of the Court's ultimate conclusion that the evidence was not suppressed in violation of *Brady*, however, it need not explore these, and other, details surrounding the

only to the R&R's analysis of the "Ward Brothers Evidence," the Court limits its review to that portion of Ayers' claim.[10]

In *Brady*, the Supreme Court held that, "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is <u>material</u> either to guilt or punishment, irrespective of the good faith of the prosecution." 373 U.S. at 87 (emphasis added). To demonstrate a constitutional violation under *Brady,* a petitioner must establish three elements:

> (1) the evidence must be favorable to the accused, either because it is exculpatory, or impeaching;
>
> (2) the evidence must have been <u>suppressed</u> by the state, either willfully or inadvertently; and
>
> (3) <u>prejudice</u> must have ensued.

*Strickler v. Green*, 527 U.S. 263, 263-64 (1999) (emphasis added). The R&R correctly outlines the relevant case law enunciating the applicable standards under *Brady* (*e.g.*, materiality, prejudice, etc.). Ayers has not objected to that discussion. Because the state appellate court sufficiently identified the constitutional principles outlined in *Brady* (and its progeny), pursuant to the AEDPA, this Court must determine whether that court unreasonably applied *Brady* in reaching its conclusion that no constitutional violation occurred.

The R&R provides a thorough, and critical, analysis of the state appellate court's analysis; indeed, it concludes that the state court's finding that the evidence was not exculpatory was an *unreasonable* application of established precedent. Not surprisingly, Ayers has not objected to that

---

Ward brothers. As addressed *infra*, the Court simply accepts the R&R's conclusion that this information constituted discoverable *Brady* material.

[10] References to "the evidence" in this section relate to the Ward Brothers Evidence.

8

conclusion (nor has Respondent). For that reason, the Court accepts the R&R's conclusions on this point without further inquiry. That determination notwithstanding, however, the R&R ultimately concludes that: (1) the evidence was not suppressed (*i.e.*, albeit late in the game, the information was disclosed); and (2) even if it had been suppressed ("effectively," as Ayers argues, or otherwise), no *Brady* "prejudice" resulted.

### 1. Suppression of the "Ward Brothers Evidence."

As he argued in his Traverse, Ayers claims that the evidence was "effectively suppressed" because it was disclosed at the "last minute before trial." He also objects to the R&R's comment that, regardless of whether the prosecution disclosed Darren Ward's criminal history, Ayers could have learned of it because it is "public record." Ayers argument is that, simply because something is available to the public (*i.e.*, public record), that does not mean it is easily obtainable by the public.

Ayers overall objection is not well-taken for several reasons. First, it is not really an objection; rather, it is simply a restated argument.[11] Second, implicit in this objection is Ayers' recognition that the evidence was received *in advance of* trial, which is essentially the requirement under *Brady*. Ayers offers no legal authority in support of his view that a "last minute" disclosure, regardless of the circumstances, amounts to suppression warranting, at this stage, the extraordinary remedy of habeas relief. Likewise, the Court is aware of no such authority. Nor does Ayers articulate why the state courts' conclusions in this regard are unreasonable applications of *Brady*. Even if the Court agreed with Ayers' unsubstantiated position, therefore, he has presented no basis upon which the Court can upset the state courts' rulings *via* the AEDPA.

---

[11] Ayers expressly concedes in his objection that the substance of his "objection" comes from the discussion contained in his Traverse. Doc. 35 at p. 1.

9

Finally, Ayers makes much of the R&R's comment that Darren Ward's criminal history is a matter of public record; indeed, he dedicates the bulk of his first objection to that comment alone. First, the R&R's conclusion that the evidence was not suppressed does not rest on the public availability of Darren Ward's criminal history. Nor does the R&R require that Ayers, or any criminal defendant, assume responsibility for obtaining all publically available information of this type – *i.e.*, it does not conclude that, if publically available, *Brady* material need not be disclosed. The R&R simply notes that, given the fact Darren Ward's identity was disclosed on the prosecution's witness list, Ayers could have "looked into" Ward's criminal history. He could have done so, for example, by inquiring of the prosecutor. The Court does not completely disagree with Ayers' view that obtaining such information can be difficult; however, that difficulty does not warrant habeas relief here, especially because the evidence was disclosed. Had it been withheld completely, this issue might warrant additional consideration; however, that is not the case.

Accordingly, Ayers' objection relating to the R&R's conclusion that the Ward Brothers Evidence was not suppressed per *Brady* is rejected.

### 2. Prejudice Under *Brady*.

Ayers objection to the R&R's conclusion regarding materiality and prejudice (under *Brady*) is either misplaced or unsupported by legal authority. First, with regard to materiality, Ayers claims that the R&R improperly ties its analysis to Hutchinson's testimony about Ayers' confession. As outlined below, this argument mischaracterizes the R&R's reference to Hutchinson's testimony. Second, with regard to prejudice, Ayers argues that the R&R improperly considered the Ward brothers evidence piecemeal, rather than collectively, such that its conclusion that a more timely disclosure would not alter the outcome of the proceeding is flawed.

10

In sum, the R&R concludes that, assuming a *Brady* violation occurred, prejudice did not result because late disclosure of the evidence did not have a reasonable probability of throwing Ayers' conviction into doubt. *Esparza v. Mitchell*, 310 F.3d 414, 423-24 (6th Cir. 2002), reversed on other grounds, 540 U.S. 12 (2004). In reaching that *alternative* conclusion, the R&R observed that the evidence must be "gauged" by the other evidence in the case – for example, Hutchinson's testimony that Ayers had confessed to the murder – when assessing the likelihood of an alternate outcome. Given direct evidence of a confession, the materiality of evidence that the police initially had "other suspects," and the details concerning those other suspects and their criminal background, is understandably lessened. As such, regardless of the amount of time the defense had to assess it, the evidence likely would have had marginal utility to the defense. Correctly so, the R&R concludes that such evidence is important, and even exculpatory; however, Ayers has made no showing that the outcome of the trial would have changed if the evidence had been disclosed sooner.

Ayers argues, however, that the R&R hinges its determination on the "believability" of Hutchinson's testimony regarding the confession. This argument is simply incorrect. Because Hutchinson's testimony was in evidence, it is proper to consider it in connection with a materiality/prejudice analysis under *Brady*. The R&R does not make "Hutchinson's credibility a prerequisite to anything. At most, and correctly so, it permits the confession testimony to be a consideration.

Finally, Ayers argues that the R&R improperly fails to consider the evidence collectively. While Ayers' objection has some logical appeal, he cites no legal authority in support. More importantly, though, Ayers' objection amounts to nothing more than a criticism with no demonstrated consequence. He does not demonstrate, neither in his objections nor in his other

11

papers, how even a collective analysis of the disclosure issues surrounding the evidence, and of the substance of that evidence, would alter the outcome of his trial, which is the prejudice standard under *Brady*. Accordingly, even if the Court were to agree that a collective analysis of the evidence is required, that conclusion is immaterial because Ayers has not demonstrated prejudice flowing therefrom.

Accordingly, Ayers' objection relating to the R&R's materiality and prejudice conclusions are either premised upon a misreading of the R&R or are unsupported by law or argument. At this stage, Ayers cannot simply raise issues without explaining them or demonstrating that they have a material (and constitutional) impact on the underlying proceedings. He has not done so; therefore his objections are rejected.

### B.    Ground Two – Prosecutorial Misconduct.

This ground asserts prosecutorial misconduct in three respects. In sum, Ayers claims that the prosecutor: (1) improperly failed to disclose sufficiently in advance of trial that officers Cipo and Kovach would testify that Ayers made incriminating statements to them; (2) improperly obtained a confession from Ayers through the use of a fellow inmate, Donald Hutchinson; and (3) improperly bolstered Hutchinson's testimony during closing argument. As did the R&R, the Court need only address the third assertion because the first two assertions are subsumed by Ayers' first and third independent grounds for relief.[12]

---

[12]    Ayers has not objected to the R&R's consideration of only the closing statement portion of this claim in connection with Ayers' second ground for relief.

12

As to the prosecutor's remarks during his closing argument,[9] the Respondent argues that Ayers procedurally defaulted this ground because he did not object to the allegedly improper statements when they were made. Because Ohio's contemporaneous-objection rule is a recognized "adequate and independent state ground," waiver results from a defendant's failure timely to object to the alleged misconduct. *State v. Smith*, 89 Ohio St. 3d 323 (2000); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). The R&R correctly concludes that, absent a justification for the default, this argument was procedurally defaulted and cannot be reviewed here. Further, the R&R points out that Ayers has made no attempt to revive the argument "with a demonstration of cause, prejudice *or actual innocence*." Doc. 32 at p. 20 (emphasis added). This reference, of course, relates to the familiar exceptions to the procedural default doctrine, by which a petitioner can cure a procedurally defaulted claim by satisfying established burdens. While "cause and prejudice" is the typical doctrine used to revive a defaulted claim, Ayers focuses here on the less common, and more stringent, "actual innocence" exception.

"Actual innocence" can be raised "to avoid a procedural bar to the consideration of the merits of [petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). If a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim." *Id.* at 316 (emphasis added). "Thus, the initial question is whether 'new facts raise[]

---

[9] While the substance of the prosecutor's comments are irrelevant given the conclusion that Ayers has procedurally defaulted this ground, Ayers' underlying argument is that the prosecutor improperly commented that Hutchinson's testimony was credible because he, presumably like the jury, had not heard about the case in the media. Ayers maintains that the jury's experience (*i.e.*, not having heard about the case) was not "evidence" and that using it to bolster Hutchinson's testimony was, therefore, improper.

sufficient doubt about [the petitioner's] guilt to undermine confidence is the result of the trial." *Souter v. Jones*, 395 F.3d 577, 590 (th Cir. 2005) (citing *Schlup v. Delo*, 513 U.S. 298, 317 (1995)). Further, actual innocence means factual innocence, not simply legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

To make a credible actual innocence claim, therefore, a petitioner <u>must support</u> his allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. He <u>must show</u> that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id*. at 327. Finally, the actual innocence exception should "remain rare" and is only to be used in a "extraordinary cases." *Id.* at 321.

As to this ground, Ayers' sole objection is that the R&R "incorrectly refused to address [the prosecutorial misconduct ground] on the basis of actual innocence." Doc. 35 at p. 2. Ayers concedes that, unless saved, the claim is procedurally defaulted. In support, he simply states that he "maintains his innocence and has always maintained that the killer was someone else." *Id*. Despite his general claim of "innocence," Ayers has not even attempted <u>to demonstrate</u> the merit of that view in his papers, much less to the satisfaction of the stringent standards outlined above. In fact, the only point at which Ayers purportedly *asserts* "actual innocence" is in his objections, which are two-sentences long (as to this ground). Ayers does not purport to present new evidence, factual or otherwise. He simply claims always to have maintained his innocence.[10] Such an unsupported argument is simply not enough.

---

[10] If presented, moreover, a defendant's own claims and/or testimony in support of his own cause need not be accepted in the absence of corroboration. *See Cuppett v. Duckworth,* 8 F.3d 1132, 1139 (7th Cir. 1993) (holding that a petitioner's self-serving statements that his conviction was constitutionally infirm are insufficient to overcome presumption of regularity afforded to state convictions).

Regardless, based on the evidence in the record, a reasonable juror certainly could conclude that Ayers is guilty beyond a reasonable doubt. Without evidence like "exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence . . . that was not presented at trial," Ayers cannot meet the actual innocence standard. *Schlup*, 513 U.S. at 324. Simply claiming "actual innocence" is far different than demonstrating it, which is required. Obviously, this is an extraordinary exception requiring compelling evidence and/or argument. Ayers has presented neither. Accordingly, Ayers' criticism that the R&R improperly refused to consider the "actual innocence" exception is not well-taken. As the R&R correctly observes, that exception was not *properly* presented for consideration.

    **C.**    **Ground Three (6th Amendment) – Right To Counsel.**

Donald Hutchinson was an inmate with Ayers at the county jail prior to Ayers' trial. In sum, Hutchinson testified at trial that Ayers confessed to committing the underlying murder and provided details that only the real killer would know. As he did in his direct appeal, Ayers claims that Hutchinson was a "government agent" when he "obtained" the confession – or, at least, parts of the confession – because Hutchinson had met with the police in the midst of the various exchanges he had with Ayers. Ayers maintains that, pursuant to the Sixth Amendment, he was entitled to counsel during any interactions that followed Hutchinson's meeting with the police.[11] Because he was not afforded counsel, Ayers claims a Sixth Amendment violation.

As outlined in the R&R, the state appellate court rejected this claim based solely on the lack of evidence in the record that "Hutchinson was instructed by Detectives Cipo and Kovach to ask certain questions of [Ayers] in an attempt to elicit a confession." Doc. 32 at p. 21 (citing *State v.*

---

11    It is undisputed that, at the time of the statements at issue, Ayers' Sixth Amendment right to counsel had attached.

15

*Ayers*, 2002 WL 31031675 at *7-8 (8th App. Dist. Ohio 2002)). In other words, the state court determined that there was no evidentiary basis for Ayers' argument that Hutchinson was a "government agent." No doubt because it felt there was no need to do so (given the record), the state court did not cite to any Supreme Court cases relating to informant-obtained confessions.

The R&R outlines the relevant Supreme Court cases on this issue and Ayers has not objected to the authorities cited, or the propositions (as provided) for which they stand. In the interests of efficiency, the Court incorporates by reference the R&R's discussion of the relevant authorities and discusses them herein only as necessary.

Citing *U.S. v. Henry*, 447 U.S. 264 (1980), and its progeny, the R&R identifies the three-part test used to determine whether a Sixth Amendment violation flows from a confession obtained by an informant – or, in this case, a cell mate. The test asks whether: (1) the right to counsel must have attached at the time of the alleged infringement; (2) the informant must have been acting as a "government agent;" and (3) the informant must have engaged in "deliberate elicitation" of incriminating information from the defendant. The R&R concludes that only the "government agent" prong is at issue here. Because resolution of that prong is fatal to Ayers' claim, the Court need not address whether the third prong – *i.e.*, "deliberate elicitation" of information – is also at issue.[12]

---

[12] The state appellate court opinion states, "Hutchinson . . . stated that he was not the instigator of his conversations with [Ayers] and that [Ayers] freely and openly volunteered the information testified to by Hutchinson." 2002 WL 31031675 at *7-8. Conversely, the R&R states, "Hutchinson admitted that he actively questioned Ayers to get more details after meeting with the detectives." Doc. 32 at p. 22. On their face, these observations of Hutchinson's testimony are at odds.

The state court's observation focuses on a collective reading of Hutchinson's testimony (*i.e.*, including all of his interactions with Ayers – both before meeting with the police, which was prompted by Ayers' initial unsolicited confessions, and after meeting with the police). The R&R, however, focuses only on Hutchinson's

The crux of the issue, therefore, is whether Hutchinson was acting as a "government agent" when Ayers made the statement at issue. As the R&R correctly notes, the Supreme Court has not formally defined the term "government agent." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3rd Cir. 1999). As such, no rule of sufficient specificity has been announced to merit "contrary to" review under the AEDPA in cases that are distinguishable from the Supreme Court precedents addressing this issue. *Id.* The R&R concludes, therefore, that, because Ayers' case is not materially indistinguishable from the various Supreme Court cases addressing informant-obtained confessions, "contrary to" review is not appropriate.[13] The Court agrees, and Ayers presents no case against which the Court should perform a "contrary to" analysis.

Instead, the R&R concludes that only the AEDPA's "unreasonable application" analysis is appropriate here. In performing that analysis, the R&R concludes that the state court's analysis was not *unreasonable* because several circuits employ the same test the state court used in determining whether Hutchinson was a "government agent." The First, Second and Eighth Circuits use a bright line test, which provides that "an informant becomes a government agent for purposes of [*Massiah*] only when the informant has been instructed by the police to get information about the particular defendant." *See U.S. v. Johnson,* 338 F.3d 918, 921-23 (8th Cir. 2003); *U.S. v. LaBare,* 191 F.3d 60, 65 (1st Cir. 1999); *U.S. v. Birbal*, 113 F.3d 342, 346 (2d Cir. 1997).

---

post-meeting testimony. As to that testimony, Hutchinson did admit that he made inquiries about the crime; though Hutchinson was clear that he did so out of his own interest and not at the direction of the police. Trial Tr. at pp. 823, 830.

Because Ayers objected at trial only to the statements he purportedly made to Hutchinson <u>after</u> Hutchinson's meeting with police, the R&R's characterization of the relevant testimony is most accurate. For the reasons outlined above, however, the Court need not resolve the nuances of Hutchinson's testimony.

13   This conclusion is in line with the state court's finding that no evidence of police instruction exists in the record.

17

Ayers objects to both of the R&R's conclusions. Neither of Ayers' objections, however, is well-taken. First, Ayers mis-characterizes the basis upon which the R&R concludes that a "contrary to" analysis is inappropriate. The R&R limits itself to the "unreasonable application" inquiry because the facts of this case are sufficiently distinguishable from the relevant Supreme Court cases, and not because "there was not sufficient evidence that Hutchinson was a government agent," as Ayers states in his objections. Doc. 35 at p. 2. The facts of this case are distinguishable and Ayers presents no argument or authority to the contrary. His review of the circumstantial "evidence" that he believes sufficiently demonstrates that Hutchinson was a government agent is more appropriately included in his second objection, which attacks the R&R's "unreasonable application" conclusion.

Ayers' also objects to the R&R's application of the AEDPA's "unreasonable application" test. His single-sentence objection states:

> Moreover, under the "unreasonable application" prong of [the AEDPA], the R&R should have concluded that the [referenced] involvement of the police with [Hutchinson] created a Sixth Amendment violation. Again, the R&R, at 26, is incorrect.

Doc. 35 at p. 3. On its face, this objection presents nothing new. In so many words, Ayers simply points out that he disagrees with the R&R, but he provides no support for his disagreement. The undisputed evidence Ayers references – *i.e.*, that the police met with Hutchinson, and Hutchinson then returned to his pod and subsequently obtained additional information from Ayers – does not establish that the police "instructed" Hutchinson to do anything. Essentially, this is the conclusion the state appellate court summarily reached. Indeed, Hutchinson testified that he contacted the police <u>after</u> Ayers told him that he had committed the murder and eventually met with them for about fifteen minutes. According to Hutchinson, however, the officers with whom he met never instructed him to get more information from Ayers, though he admits that is what he did. Tr. at pp. 814-34.

Ayers objections to this ground are nothing more than re-characterizations of his prior arguments. They present no credible criticism of the R&R's analysis of this ground, with which the Court agrees. As the AEDPA instructs, it is not this Court's function to engage in a *de novo* review of the underlying proceedings. Here, as the R&R concludes, only an "unreasonable application" analysis is appropriate. The Court agrees with the R&R that the state appellate court's analysis was not an unreasonable application of established federal law, despite the fact it made no specific reference to Supreme Court precedent.

**D.     Ground Four (5th and 14th Amendments) – Sufficiency of the Evidence.**

While Ayers asserts an "insufficiency of the evidence" ground for habeas relief, his papers do not provide any argument in support of that assertion. Instead, in his Traverse, Ayers generically references the bases for his Criminal Rule 29 motions for acquittal (made at trial) and then summarily states that the prosecution failed to prove every element beyond a reasonable doubt. Regardless of the fact Ayers has provided no argument, the R&R construes this ground broadly and addresses: (1) the credibility of Hutchinson as a witness, and (2) whether the prosecution specifically proved each element of the crime(s). These seem to be the portions of the record Ayers finds problematic, though he did not articulate his concerns very well.

Correctly citing *Jackson v. Virginia*, the R&R explains that the proper "sufficiency" test asks "whether after viewing the evidence in a light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1992) (emphasis in original). With specific references to the evidence presented in this case, the R&R applies the *Jackson* test to the crimes of aggravated robbery, aggravated burglary and aggravated murder and concludes that sufficient evidence was presented to support the Ayers'

19

conviction.

Ayers has asserted a two-sentence objection in regard to this ground. In its entirety, the objection states:

> The R&R incorrectly analyzed the sufficiency of the aggravated murder conviction, in part, on the basis of R.C. 2903.01(A), despite the fact that this allegation, contained in Count One of the Indictment, was not the subject of a conviction. Otherwise, the R&R's conclusions in this regard are not objectionable.

On its face, this objection amounts only to the identification of an alleged – and immaterial – clerical mistake with regard to whether R.C. 2903.01(A) was the subject of the resulting conviction. It does not challenge, however, the R&R's substantive conclusions, with which the Court wholly agrees. The Court need not, therefore, attempt to decipher, much less resolve, the non-substantive aspect of this objection.

### IV.    CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the magistrate judge's R&R. David Ayers' petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254 (Doc. 1), is **DENIED** and his case **DISMISSED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**Dated: September 27, 2007**